USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/19/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LARRY McNAIR; ERIC KEATON;
MALIK RAINEY; ANTOINE GARCIA;
RAKEEM DOUGLAS; and DAVID
VAUGHN,

                  Plaintiffs,

-against-

N.Y.C. D.O.C. COMMISSIONER
JOSEPH PONTE; G.R.V.C. WARDEN
MONICA WINDLEY; DEPUTY
WARDEN SECURITY RENE; DEPUTY
WARDEN SECURITY CAPUTO;
DEPUTY WARDEN SECURITY HILL;
C.O. DECICCO; C.O. STRONG; and C.O.
JANE DOE,

                  Defendants.

**ORDER**

16 Civ. 4646 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Pro se Plaintiffs Larry McNair, Eric Keaton, Malik Rainey, Antoine Garcia, Rakeem Douglas, and David Vaughn – each of whom is a current or former pretrial detainee at the George R. Vierno Center ("GRVC") on Rikers Island – bring this action under 28 U.S.C. § 1983, asserting conditions-of-confinement claims arising out of their incarceration at the GRVC. (McNair Am. Cmplt. (Dkt. No. 37); Keaton Second Am. Cmplt. ("SAC") (Dkt. No. 44); Rainey Am. Cmplt. (Dkt. No. 34); Garcia Am. Cmplt. (Dkt. No. 31); Douglas Am. Cmplt. (Dkt. No. 32); Vaughn Am. Cmplt. (Dkt. No. 33)) Plaintiffs jointly filed the initial Complaint on June 20, 2016 (Cmplt. (Dkt. No. 2)), but separately filed individual amended complaints after Chief Judge McMahon issued a November 9, 2016 order to amend. (See Dkt. Nos. 28, 31-34, 36-37, 44)

Plaintiffs' separate amended complaints assert similar claims, but there is some variation in the allegations and the defendants named in these pleadings.[1]

On June 21, 2017, Commissioner Ponte, GRVC Warden Windley, Deputy Warden Rene, Deputy Warden Caputo, and Corrections Officer Decicco moved to dismiss all six amended complaints, arguing that (1) Plaintiffs fail to state a claim; (2) Plaintiffs fail to allege any personal involvement by Defendants; and (3) McNair and Keaton cannot seek injunctive relief because they are no longer confined at the GRVC.[2] (Def. Mot. (Dkt. No. 53)) Only McNair, Keaton, and Vaughn filed oppositions to Defendants' motion to dismiss. (See Dkt. Nos. 60, 71, 74)

On September 13, 2017, this Court referred Defendants' motion to the assigned magistrate judge for a Report and Recommendation ("R&R"). (Dkt. No. 70) On February 22, 2018, Magistrate Judge Barbara Moses issued a 24-page R&R recommending that Defendants' motion to dismiss be granted. (R&R (Dkt. No. 82) at 23) For the reasons stated below, this Court will adopt the R&R in its entirety.

---

[1] Commissioner Ponte and Warden Windley are named as defendants by all six Plaintiffs, Deputy Warden Rene is named as a defendant by Keaton and Douglas; Deputy Warden Caputo is named as a defendant by McNair and Keaton; and Corrections Officer Decicco is named as a defendant by Rainey, Garcia, Douglas, and Vaughn. (See Dkt. Nos. 31-34, 37, 44) Certain other individuals listed as defendants in one or more of the amended complaints, including "Deputy Warden Security Hill," "C.O. Strong," and "C.O. Jane Doe," were never served and have not appeared in this action.

[2] Defendants also moved to revoke McNair's in forma pauperis status and to dismiss his claims on the ground that he had accumulated "more than three strikes under the Prisoner Litigation Reform Act." (Def. Mot. (Dkt. No. 53) at 2) In an October 11, 2017 Order, this Court denied the motion, finding that McNair could pursue his claims under the "imminent danger" exception. (See Dkt. No. 77 at 3)

2

## BACKGROUND

### I. PROCEDURAL HISTORY

On June 20, 2016, Dushawn King – a pre-trial detainee at the GRVC – filed a Complaint asserting three conditions-of-confinement claims under 42 U.S.C. § 1983. (See Cmplt. (Dkt. No. 2)) The Complaint included, as an attachment, the names and signatures of twenty additional pre-trial detainees (see id. at 3-4), and named as defendants New York City Department of Corrections ("DOC") Commissioner Ponte, GRVC Warden Windley, Deputy Warden Hill, Corrections Officer Decicco, and Corrections Officer Strong. (Id. at 1)

The Complaint alleged, "on behalf of all plaintiffs named herein," that beginning in March 2016, "plaintiffs . . . were subject to the toxic ingestion of mold from the shower areas that was and could cause . . . cancer[] and lung infection during daily showers[,] where the steam from the hot water vaporizes, and is inhaled by all plaintiffs." (Id. at 6) The Complaint further alleged that there were "pre[-]existing work orders to remove the [mold]" which were "never completed . . . by the defendants['] maintenance department." (Id.) The Complaint also alleged that "plaintiffs are . . . forced to sit on stools . . . with no back support," which "causes plaintiffs to walk with the hunchback syndrome," to "need the assistance of a cane," and to develop hemorrhoids. (Id. at 6-7) The Complaint further alleged that, in June 2016, Officers Decicco and Strong did not permit Plaintiffs to leave their cells after an eight hour period, which caused Plaintiffs to miss breakfast. (Id. at 7)

Although the Complaint alleged a list of injuries, it did not link any particular injury with any particular plaintiff. (See id. at 9 ("Plaintiffs have suffered an enormous amount of emotional stress, and mental anguish, chest pains, back pains, [hemorrhoids], hunch back syndrome, breathing problems, runny nose, scratchy throat, teary eyes, claustrophobia, anxiety,

3

nightmares, headaches, paranoia, visual and auditory hallucinations, cramps, [and] ambulation problems[.]")) The Complaint also did not allege, with respect to the mold and stools issues, that any particular defendant was personally involved in the alleged unconstitutional conduct. (See id. at 6) Instead, the Complaint alleged that Commissioner Ponte, Warden Windley, and Deputy Warden Rene (who was not named in the caption) were liable because they "did not use their broad discretion in forming directives and policies [to require that] their subordinates operate [the GRVC] within the confines of the United States Constitution and New York State and City Laws." (Id. at 7-8)

On July 19, 2016, Chief Judge McMahon issued an order directing each plaintiff – other than King – to pay the court filing fee or to file an in forma pauperis application and authorization form. (Dkt. No. 5 at 1-2) The July 19, 2016 order also directed each plaintiff – except for King – to certify the Complaint, and warned plaintiffs that their claims would be dismissed if they did not comply with the order within thirty days. (Id. at 2)

Eight plaintiffs – McNair, Keaton, Rainey, Garcia, Douglas, Vaughn, Justin Camenello, and Jayme Rodriguez – complied with the July 19, 2016 order. (See Dkt. No. 28) On November 9, 2016, Chief Judge McMahon issued an order dismissing the claims of the other signatories to the Complaint, and directing the remaining nine plaintiffs (the eight plaintiffs who complied with the July 19, 2016 order plus King) to file an amended complaint within 60 days. (Id. at 1, 4)

The November 9, 2016 order also specified the Complaint's deficiencies, and granted Plaintiffs leave to amend their complaint to "detail their claims":

> Plaintiffs' assertions do not suggest that Defendants were deliberately indifferent to an excessive risk to their health or safety. With respect to Plaintiff[s'] toxic mold claim, Plaintiffs do not assert (1) how each of them have suffered from exposure to the mold, (2) whether Defendants are aware that Plaintiffs have

4

> become sick from the mold, or (3) how Defendants have ignored the risk of Plaintiffs' being exposed to the mold.
>
> As for Plaintiffs' stool claim, Plaintiffs do not state any facts detailing why Defendants are requiring them to sit on a stool for prolonged periods of time and whether Defendants are aware that this prolonged sitting has caused Plaintiffs to suffer serious harm that Defendants are ignoring. Finally, as for Plaintiffs' cell claim, they do not assert whether Defendants have refused to let them leave their cells for prolonged periods without cause, on how many occasions, and how often Plaintiffs have gone without a meal as a result of being locked in their cells.

(Id. at 3-4) Judge McMahon's order also instructed Plaintiffs that "the body of Plaintiffs' amended complaint must tell the Court: who violated their federally protected rights; what facts show that their federally protected rights were violated; when such violation occurred; where such violation occurred; and why Plaintiffs are entitled to relief." (Id. at 5)

Between January 10, 2017 and February 14, 2017, Garcia, Douglas, Vaughn, Rainey, Keaton, and McNair filed separate amended complaints. (Dkt. Nos. 31-34, 36, 37) Camanello, Rodriguez, and King did not file amended complaints; accordingly, their claims were dismissed. (See Dkt. Nos. 38 at 1; Dkt. No. 40 at 2) The case was assigned to this Court on March 1, 2017.

On June 21, 2017, Defendants moved to dismiss all six amended complaints. (Def. Mot. (Dkt. No. 53)) Only McNair, Keaton, and Vaughn filed oppositions to Defendants' motion to dismiss. (See Dkt. Nos. 60, 71, 74) On September 13, 2017, this Court referred Defendants' motion to Magistrate Judge Moses for a Report and Recommendation. (Dkt. No. 70) On February 22, 2018, Magistrate Judge Moses issued a 24-page R&R recommending that Defendants' motion to dismiss be granted, but that Keaton, Rainey, Garcia, Douglas, and Vaughn be given leave to amend their claims concerning the mold issue, and that McNair be given leave to amend his claim that he was forced to sleep on a "yoga mat." (R&R (Dkt. No. 82) at 23)

5

Judge Moses's R&R gives notice that any objections are to be filed within fourteen days from service of the R&R, and that "failure to file timely objections will preclude appellate review." (Id. at 24) Only Keaton filed an objection to the R&R. (Dkt. No. 83)

## II. PLAINTIFFS' ALLEGATIONS[3]

### A. Mold in the Showers

Keaton, Rainey, Garcia, Douglas, and Vaughn allege that, beginning in March 2016, they were subjected to "the toxic ingestion of mold from the [GRVC] shower areas that could cause . . . cancer[], and lung infection during daily showers[,] where [] steam from the hot water vaporizes, and is inhaled by [p]laintiff." (Keaton SAC (Dkt. No. 44) at 5; Rainey Am. Cmplt. (Dkt. No. 34) at 4; Garcia Am. Cmplt. (Dkt. No. 31) at 4; Douglas Am. Cmplt. (Dkt. No. 32) at 4; Vaughn Am. Cmplt. (Dkt. No. 33) at 4) Plaintiffs further allege that "[t]here are pre-existing work order[s] to remove [the mold]," which were "never completed . . . by the defendants via [their] maintenance department." (Keaton SAC (Dkt. No. 44) at 5)

Keaton, Rainey, Garcia, and Douglas do not allege that they suffered any specific injuries as a result of their exposure to the mold. Vaughn claims that he has "a rash on [his] foot from the mold in the showers." (Vaughn Am. Cmplt. (Dkt. No. 33) at 5)

No Plaintiff has alleged that any Defendant was aware of the mold or ignored the risks associated with Plaintiffs' exposure to the mold.

---

[3] "[I]n deciding a motion to dismiss a pro se complaint, it is appropriate to consider 'materials outside the complaint to the extent that they are consistent with the allegations in the complaint,' including 'documents that a pro se litigant attaches to [his] opposition papers.'" Pearson v. Walden Univ., 144 F. Supp. 3d 503, 508 (S.D.N.Y. 2015) (internal citations omitted). In its factual summary, the Court relies on Plaintiffs' complaints and documents that Plaintiffs filed in opposition to Defendants' motion to dismiss. (See Dkt. Nos. 60, 72, 73)

6

### B. Backless Stools

All six plaintiffs allege that they were required to sit on backless stools in the GRVC's day room for twelve to fourteen hours each day. (See McNair Am. Cmplt. (Dkt. No. 37) at 3; Keaton SAC (Dkt. No. 44) at 8; Rainey Am. Cmplt. (Dkt. No. 34) at 5; Garcia Am. Cmplt. (Dkt. No. 31) at 5; Douglas Am. Cmplt. (Dkt. No. 32) at 5; Vaughn Am. Cmplt. (Dkt. No. 33) at 6) Keaton, Rainey, Garcia, and Douglas allege that sitting on these stools have extended their spines, causing them to "walk with the hunchback syndrome," and to "need the assistance of a cane." (Keaton SAC (Dkt. No. 44) at 8; Rainey Am. Cmplt. (Dkt. No. 34) at 5; Garcia Am. Cmplt. (Dkt. No. 31) at 5; Douglas Am. Cmplt. (Dkt. No. 32) at 5) McNair similarly alleges that sitting on the backless stools caused him to suffer "present and future long term back problems, such as sciatica[,] slipped discs, [and] the hunchback syndrome." (McNair Am. Cmplt. (Dkt. No. 37) at 3) Vaughn states that he is "starting physical therapy for [his] back pains," but he does not clearly identify the cause of his pain. (Vaughn Am. Cmplt. (Dkt. No. 33) at 5) No Plaintiff alleges personal involvement by any Defendant in the alleged constitutional violation.

### C. Yoga Mat

McNair claims that he was forced to sleep on a "yoga mat[] that was not manufactured for sleep purposes for months." (McNair Am. Cmplt. (Dkt. No. 37) at 3) In an affidavit submitted in opposition to Defendants' motion to dismiss, McNair claims that he "suffers from the 'hunchback syndrome' [and] needs a cane to ambulate," currently "ingests back pain medication for his injuries," "wears a back brace," and "has to avoid stairs." (McNair Aff. (Dkt. No. 60) at 3) McNair also states that he has been diagnosed with "sciatica," and that the condition resulted from "sleeping on these floor mats." (McNair Aff. (Dkt. No. 60) at 4)

7

McNair also submitted medical records showing that he uses a cane, wears a back brace, and has been treated for back pain. (Id. at 9-13)

### D. Missed Breakfast

Garcia, Douglas, Rainey, Keaton, and McNair allege that, on one occasion, they were not permitted to leave their cells after an eight-hour period, causing them to miss breakfast. (McNair Am. Cmplt. (Dkt. No. 37) at 3; Keaton SAC (Dkt. No. 44) at 8; Rainey Am. Cmplt. (Dkt. No. 34) at 5; Garcia Am. Cmplt. (Dkt. No. 31) at 5-6; Douglas Am. Cmplt. (Dkt. No. 32) at 5-6) Garcia, Douglas, Rainey, and Keaton claim that this incident occurred in June 2016, and assert that Officers Decicco and Strong did not permit Plaintiffs to leave their cells. (Keaton SAC (Dkt. No. 44) at 8; Rainey Am. Cmplt. (Dkt. No. 34) at 5; Garcia Am. Cmplt. (Dkt. No. 31) at 5-6; Douglas Am. Cmplt. (Dkt. No. 32) at 5-6) McNair alleges that this incident occurred in April 2016, and states that it was "C.O. Jane Doe" who refused to permit McNair to go to breakfast. (McNair Am. Cmplt. (Dkt. No. 37) at 3)

## DISCUSSION

### I. LEGAL STANDARD

#### A. Review of Magistrate Judge's Report and Recommendation

In reviewing a magistrate judge's report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), a party may submit objections to a magistrate judge's R&R. Any objections must be "specific" and "written," and must be made "[w]ithin 14 days after being served with a copy of the recommended disposition." Fed. R. Civ. P. 72(b)(2); see also 28 U.S.C. § 636(b)(1).

8

"'The district judge evaluating a magistrate judge's recommendation may adopt those portions of the recommendation, without further review, where no specific objection is made, as long as they are not clearly erroneous.'" Gilmore v. Comm'r of Soc. Sec., No. 09 Civ. 6241 (RMB) (FM), 2011 WL 611826, at *1 (S.D.N.Y. Feb. 18, 2011) (quoting Chimarev v. TD Waterhouse Investor Servs., Inc., 280 F. Supp. 2d 208, 212 (S.D.N.Y. 2003)). When a timely objection has been made to the Magistrate Judge's recommendations, "[the district court judge] shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

"'[T]o the extent . . . that the [objecting] party makes only conclusory or general arguments, or simply reiterates the original arguments,'" however, "'the Court will review the [R&R] strictly for clear error.'" DiPilato v. 7-Eleven, Inc., 662 F. Supp. 2d 333, 339 (S.D.N.Y. 2009) (quoting IndyMac Bank, FSB v. Nat'l Settlement Agency, Inc., No. 07 Civ. 6865 (LTS) (GWG), 2008 WL 4810043, at *1 (S.D.N.Y. Oct. 31, 2008)); see also Edwards v. Fischer, 414 F.Supp.2d 342, 347 (S.D.N.Y. 2006) ("[W]here objections are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [pleadings], reviewing courts should review a report and recommendation for clear error.") (internal quotation marks omitted). Furthermore, although "[t]he objections of parties appearing pro se are generally accorded leniency and should be construed to raise the strongest arguments that they suggest, . . . even a pro se party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument." DiPilato, 662 F. Supp. 2d at 340 (internal quotation marks and citations omitted).

Here, only Keaton filed an objection to the R&R (Dkt. No. 83), and his objection is a perfunctory attempt to engage the Court in a rehashing of the same arguments set forth in his pleading. (See id. at 1 ("Plainitff Keaton bring[s] this motion objecting [to the R&R] on the grounds of tort liabilities."); id. ("These acts are deliberate indifferen[ce] [because] the[re] are preexisting work-orders to remove [an] a[s]bestos like substance, [which were] never attempted [] or completed to be removed by defendants[,] . . . [and] subject[ing] Plaintiff Keaton to toxic ingestion of mold from the shower area could cause long term cancerous lung infection."); id. at 2 ("Plaintiff Keaton has been expose[d] to an unreasonable risk to his future health . . . ."). Accordingly, the Court need not conduct a de novo review, and will review the R&R for clear error.

## B. Motion to Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim

is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 545).

A "pro se complaint . . . [is] interpret[ed] . . . to raise the 'strongest [claims] that [it] suggest[s].'" Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam)); see Weixel v. Bd. of Educ. of City of New York, 287 F.3d 138, 145-46 (2d Cir. 2002) ("When considering motions to dismiss a pro se complaint such as this, 'courts must construe [the complaint] broadly. . . .'" (quoting Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000))). "However, although pro se filings are read liberally and must be interpreted 'to raise the strongest arguments that they suggest,' a pro se complaint must still 'plead sufficient facts to state a claim to relief that is plausible on its face.'" Wilder v. United States Dep't of Veterans Affairs, 175 F. Supp. 3d 82, 87 (S.D.N.Y. 2016) (internal citations omitted). Moreover, "the court need not accept as true 'conclusions of law or unwarranted deductions of fact.'" Whitfield v. O'Connell, No. 09 Civ. 1925 (WHP), 2010 WL 1010060, at *4 (S.D.N.Y. Mar. 18, 2010) (quoting First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994)); see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) ("[T]hreadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice [to establish entitlement to relief].").

## II. ANALYSIS[4]

All of Plaintiffs' claims relate to the conditions of confinement at the GRVC. Judge Moses's thorough and well-reasoned R&R concludes that Defendants' motion to dismiss

---

[4] In their oppositions to Defendants' motion to dismiss, Vaughn and Keaton allege – for the first time – that they were deprived of exercise on the same day that they were deprived of breakfast. (Keaton Opp. (Dkt. No. 71) at 3 ("Defendants Decicco [and] Strong . . . didn't let Keaton . . . out of [his] cell[] in that 8 hour period[], [and] took it upon them[selves] to deny [him] of a life necessity . . . [a]nd of outside exercise."); Vaughn Opp. (Dkt. No. 74) at 4 ("Defendants Decicco

11

should be granted on all claims, but that Keaton, Rainey, Garcia, Douglas, and Vaughn should be given leave to amend their mold-related claims, and that McNair should be given leave to amend his claim that he was forced to sleep on a "yoga mat." (R&R (Dkt. No. 82) at 23) The Court finds no clear error in Judge Moses's recommendation.

### A. Applicable Law

#### 1. Conditions of Confinement Claims

"A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment," which requires "a showing that the officers acted with deliberate indifference to the challenged conditions." Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017). To state a deliberate indifference claim under Section 1983, a plaintiff must plead both objective and subjective elements. Id.

The objective element requires an inmate to allege conditions that, "either alone or in combination, pose an unreasonable risk of serious damage to his health, which includes the risk of serious damage to physical and mental soundness." Id. at 30 (internal quotation marks and citations omitted). In determining whether a deprivation is "sufficiently serious," the court should not apply a "static test," but rather evaluate "the conditions themselves . . . in light of contemporary standards of decency." Id. (internal quotation marks and citations omitted).

---

[and] Strong . . . didn't let Vaughn . . . out of [his] cell[] in that 8 hour period[], [and] took it upon them[selves] to deny [him] of a life necessity . . . [a]nd of outside exercise.")) Judge Moses observed that "[b]ecause these are new claims . . . , they are not properly considered in connection with [D]efendants' motion to dismiss [P]laintiffs' existing claims." Judge Moses further concluded that "even if [she] were to analyze them on the merits, . . . they fail to state a constitutional claim." (R&R (Dkt. No. 82) at 23) While "[e]xercise is one of the basic human needs protected by the Eighth Amendment, . . . a deprivation of exercise amounts to a constitutional violation only where an inmate is denied all meaningful exercise for a substantial period of time." Ruggiero v. Prack, 168 F. Supp. 3d 495, 519 (W.D.N.Y. 2016) (internal quotation marks and citation omitted). Here, Vaughn and Keaton claim that they were denied exercise for one day, and this claim does not rise to the level of a constitutional violation.

"[C]onditions of confinement may be aggregated to rise to the level of a constitutional violation, but 'only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise.'" Id. (quoting Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013)).

The subjective element requires an inmate to allege that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee[,] even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." Id. at 35. An allegation of "mere negligence" does not suffice, id. at 36, and alleged "reckless or intentional action (or inaction)" is only sufficient if it is "the product of a voluntary act (or omission) by the official." Id. at 36 n.16.

### 2. **Personal Involvement**

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." Grullon v. City of New Haven, 720 F.3d 133, 138 (2d Cir. 2013). Furthermore, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits," Iqbal, 556 U.S. at 676, "supervisors cannot be held liable based solely on the alleged misconduct of their subordinates." Vasquez v. Reilly, No. 15-CV-9528 (KMK), 2017 WL 946306, at *11 (S.D.N.Y. Mar. 9, 2017). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. "Conclusory accusations regarding a defendant's personal involvement in the alleged violation, standing alone, are not sufficient." Vasquez, 2017 WL 946306, at *11.

13

### B. Mold-Related Claims

Judge Moses concludes that the mold-related claims alleged by Keaton, Rainey, Garcia, Douglas, and Vaughn should be dismissed, because "plaintiffs fail to state facts making any of the defendants [individually] liable for the condition." (R&R (Dkt. No. 82) at 15) The Court agrees with that assessment.

As to Vaughn, Judge Moses correctly observes that he "does not allege any facts as to the conduct of any [individual] defendant." (Id. at 16; see also Vaughn Am. Cmplt. (Dkt. No. 33) at 3-5) Because Vaughn has not pled any facts "show[ing] [a] defendant's personal involvement in the alleged constitutional deprivation," Grullon, 720 F.3d at 139, his mold-related claim is patently insufficient.

As to Keaton, Rainey, Garcia, and Douglas, Judge Moses correctly observes that they only allege "in extremely general terms, that the most senior defendants – Commissioner Ponte, Warden Windley, and Deputy Warden Rene – failed to require their subordinates to comply with the Constitution." (R&R (Dkt. No. 82) at 16; see also Keaton SAC (Dkt. No. 44) at 9 ("Commissioner Joseph Ponte, G.R.V.C. Warden Monica Windley, and Deputy Warden of Security Rene are liable . . . in that they didn't[,] in their [] discretion in forming directives and policies[,] [require] that their subordinates operate [the GRVC] within the confines of the United States Constitution. . . ."); Rainey Am. Cmplt. (Dkt. No. 34) at 5; Garcia Am. Cmplt. (Dkt. No. 31) at 6; Douglas Am. Cmplt. (Dkt. No. 32) at 6) Such conclusory allegations are insufficient to establish the personal involvement of supervisory defendants in the alleged constitutional violation. See Lindsey v. Butler, 43 F. Supp. 3d 317, 330 (S.D.N.Y. 2014) ("In order to hold supervisors liable for creating a custom or policy fostering a constitutional violation, courts in this Circuit have required that plaintiffs plead more than conclusory allegations of the existence

14

of the custom or policy.") (collecting cases); Miner v. Goord, 646 F. Supp. 2d 319, 326 (N.D.N.Y. 2009) ("conclusory allegations" that supervisor "created a policy which permitted unconstitutional practices to occur" were "insufficient to show [] personal involvement" in alleged constitutional deprivation), aff'd, 354 F. App'x 489 (2d Cir. 2009). Accordingly, these plaintiffs' mold-related will be dismissed.

Judge Moses recommends, however, that these five plaintiffs be given leave to amend their mold-related claims. (R&R (Dkt. No. 82) at 17-18) Judge Moses concludes that amendment would not be futile because (1) "[c]ourts have found that 'allegations of exposure to black mold may, in certain circumstances, satisfy the objective element of [a conditions of confinement] claim,'" (id. at 15 (quoting Reid v. Nassau Cty. Sheriff's Dep't, No. 13-CV-1192 SJF SIL, 2014 WL 4185195, at *14 n.14 (E.D.N.Y. Aug. 20, 2014) (collecting cases))), and (2) plaintiffs allege that "work orders [to remove the mold] existed but were not executed." (Id. at 17) The Court agrees. Accordingly, Keaton, Rainey, Garcia, Douglas, and Vaughn will be given one final opportunity to allege facts showing that (1) the mold in the showers has caused, or poses an unreasonable risk of causing, serious damage to their own health; and (2) that each supervisory defendant intentionally permitted the alleged condition to exist, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to Plaintiffs, even though the supervisory defendant knew, or should have known, that the condition posed an excessive risk to Plaintiffs' health or safety. Darnell, 849 F.3d at 30, 35.

### C. Backless Stools

Judge Moses recommends that Plaintiffs' claims related to the backless stools be dismissed, because Plaintiffs' allegations do not satisfy either the objective prong or the subjective prong of a conditions-of-confinement claim. (R&R (Dkt. No. 82) at 18-19) This

15

Court agrees. As an initial matter, Judge Moses correctly observes that, "[a]lthough some of these plaintiffs claim in conclusory terms that they were 'forced' to sit on these stools, . . . [n]o plaintiff alleges that he is unable to stand, to stretch, or to move around the day room." (Id. at 18) Accordingly, "a more plausible reading of their allegations is that no better furniture was available for them to sit on." (Id.)

With respect to the objective prong, Judge Moses correctly notes that "'the Constitution does not mandate comfortable prisons'" (id. at 19 (quoting Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002)), and concludes that "offering only backless stools to sit on in the day room is [not] sufficiently serious, in light of contemporary standards of decency, to rise to the level of a Fourteenth Amendment violation." (Id.) The Court finds no error in that conclusion. See Tarpley v. Stouffer, No. CIV.A. GLR-13-522, 2014 WL 768838, at *1, 7 (D. Md. Feb. 21, 2014) (holding that "[n]one of the claims asserted [by plaintiff] amount to a deprivation of minimal life necessities" where plaintiff claimed, inter alia, that the recreation room contained "seating for only 16 people," and that "on most nights there [we]re more than 40 inmates crowded into the room," making it "'standing room only'"); Patin v. LeBlanc, No. CIV.A. 11-3071, 2012 WL 3109402, at *14 (E.D. La. May 18, 2012) (holding that plaintiff had "not alleged a violation under the objective component of the Eighth Amendment" where he complained, inter alia, of "reduced [] available seating per inmate" and the lack of "chairs or tables in the cells for an inmate to use when seating [wa]s not available in the recreation area"), report and recommendation adopted, No. CIV.A. 11-3071, 2012 WL 3109398 (E.D. La. July 31, 2012).

With respect to the subjective prong, Judge Moses concludes that, even if Plaintiffs' allegations met the objective prong of a Fourteenth Amendment claim, their claims

16

"would nonetheless fail," because they do not explain "how any of the defendants they have sued was personally involved in creating (or failing to remediate) the condition complained of, much less that any of them acted with a 'sufficiently culpable state of mind.'" (R&R (Dkt. No. 82) at 19 (quoting Darnell, 849 F.3d at 35)) The Court also finds no error in that conclusion.

Judge Moses recommends that these claims be dismissed with prejudice. (Id.) The Court agrees that amendment of these claims would be futile, because the provision of only backless stools in the day room does not rise to a constitutional violation. Accordingly, these claims will be dismissed with prejudice.

### D. Yoga Mat

Judge Moses concludes that McNair's claim that he was required to sleep on a yoga mat should be dismissed, because McNair has not alleged facts "demonstrating the personal involvement of any of the defendants he names." (R&R (Dkt. No. 82) at 20) The Court agrees. As Judge Moses observes, McNair alleges that former Commissioner Ponte, Warden Windley, and Deputy Warden Caputo "forced [him] to sleep on [a] yoga mat[]" (McNair Cmplt. (Dkt. No. 37) at 3), but this allegation "lacks any factual detail explaining what these defendants actually did." (R&R (Dkt. No. 82) at 20) McNair does not allege that any of these officials "personally required [him] to sleep on a yoga mat, directed others to do so, or even knew what type of bedding [he] was given." (Id. at 20-21) Nor does he allege that "these defendants created or enforced a policy requiring inmates to sleep on yoga mats at the GRVC." (Id. at 21) Furthermore, although McNair alleges that he filed a grievance regarding the yoga mat in April 2016, and that this grievance was "sent to Deputy Warden of Security Caputo, Warden Monica Windley, and Commissioner Joseph Ponte" (McNair Cmplt. (Dkt. No. 37) at 6-7), "[Defendants'] mere receipt of [plaintiff's] grievance, and their subsequent inaction, are

17

insufficient to establish the personal involvement of these defendants." Alvarado v. Westchester Cty., 22 F. Supp. 3d 208, 215 (S.D.N.Y. 2014). Accordingly, McNair's claim related to the yoga mat must be dismissed.

Judge Moses recommends, however, that McNair be given leave to amend this claim, "[g]iven [its] nature," and the "relatively robust injury allegations." (R&R (Dkt. No. 82) at 21) With respect to the "nature of the claim," Judge Moses states that McNair's allegations, while "short on specifics," appear to "satisfy the pleading threshold for the objective prong of a Fourteenth Amendment conditions-of-confinement claim." (Id. at 20) The Court agrees.

> The Second Circuit has held that, as a regular method of housing inmates, forcing prisoners or pre-trial detainees to sleep on mattresses placed on the floor does not pass constitutional muster, Lareau v. Manson, 651 F.2d 96, 107 (2d Cir.1981), but [that] this should not be considered a per se rule, see Peterkin v. Walker, 101 F.3d 681, 1996 WL 146530, at *1 (table) (2d Cir.1996) . . . . A proper analysis requires this Court to consider all the particular circumstances of the case. See Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

Brown v. McGinnis, No. 05-CV-758S, 2012 WL 267638, at *6 (W.D.N.Y. Jan. 30, 2012). Here, as Judge Moses observes, McNair alleges that he was deprived of a standard prison mattress "'designed for sleep purposes'" for "'months,'" despite "his pre-existing back problems." (R&R (Dkt. No. 82) at 20 (quoting McNair Am. Cmplt. (Dkt. No. 37) at 3)) These allegations plausibly plead conditions "pos[ing] an unreasonable risk of serious damage to [McNair's] health." Darnell, 849 F.3d at 30. Accordingly, McNair will be given one final opportunity to allege facts showing that each defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to McNair even though the supervisory defendant knew, or should have known, that the condition posed an excessive risk to health or safety. Id. at 35.

18

### E. Missed Breakfast

Judge Moses recommends that Garcia, Douglas, Rainey, Keaton, and McNair's claim that they missed breakfast on one occasion be dismissed, because "no plaintiff alleges that he missed more than one breakfast," and "[i]t is well established that a single missed meal cannot satisfy [] the objective prong of a conditions-of-confinement claim." (R&R (Dkt. No. 82) at 22) The Court agrees with that assessment. While "[t]he Eighth Amendment requires that prisoners be provided with 'nutritionally adequate food,'" Edwards v. Horn, No. 10 CIV. 6194 (RJS) (JLC), 2012 WL 760172, at *8 (S.D.N.Y. Mar. 8, 2012) (quoting Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983)), "[c]ourts have found the Eight Amendment to be implicated only where a prisoner's allegations involve a serious and continued deprivation of nutritionally adequate food." Id. at *8-9 (dismissing Section 1983 "claims regarding deprivation of meals" where plaintiff alleged that that he was deprived of adequate food "on four separate dates over a span of six months," including one "morning meal" and one "afternoon meal"). Here, no plaintiff has alleged "a serious and continued deprivation of nutritionally adequate food." Id. at *8. Accordingly, the missed breakfast claim asserted by Garcia, Douglas, Rainey, Keaton, and McNair will be dismissed.

Judge Moses recommends that this claim be dismissed with prejudice. (R&R (Dkt. No. 82) at 22) The Court agrees that amendment of this claim would be futile. Accordingly, it will be dismissed with prejudice.

### CONCLUSION

For the reasons stated above, the Court adopts Judge Moses's February 22, 2018 Report & Recommendation in its entirety, and Defendants' motion to dismiss is granted. As to leave to amend,

19

1. the claims of Garcia, Douglas, Rainey, Keaton, and Vaughn related to mold in the GRVC showers are dismissed with leave to amend;

2. Plaintiffs' claims related to backless stools are dismissed without leave to amend;

3. McNair's claim alleging that he was required to sleep on a yoga mat is dismissed with leave to amend;

4. Plaintiffs' claims related to a missed breakfast meal are dismissed without leave to amend.

Any amended complaint must be filed by shall be filed by April 20, 2018.

The Clerk of Court is directed to terminate the motion (Dkt. No. 53), and to mail a copy of this order to pro se Plaintiffs.

Dated: New York, New York
March 19, 2018

SO ORDERED.

*Paul S. Gardephe*
Paul G. Gardephe
United States District Judge